[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff wife, 38, whose birth name is Gill, and the defendant husband, 42, married on April 27, 1990 in Stamford, Connecticut. Both have lived in Connecticut throughout the marriage to the present, thereby affording jurisdiction to this court. There are two children issue of the marriage, Cara d.o.b. October 6, 1990 and Carl Joseph d.o.b. December 27, 1993. The parties have agreed on joint legal custody with principal residence of both children to be with the mother and reasonable visitation by the father. The parties are at odds over the financial aspects.
The plaintiff has been employed by Champion International for 14 years. She currently earns $931.09 gross weekly wage and, after mandatory deductions, $606 net weekly, as itemized on the plaintiff's child support guidelines worksheet. However, the plaintiff's U.S. Individual Income Tax Return (Defendant's Exhibit #1) lists $3,528.00 withheld for the year and $3,507 refunded. The state income tax return lists $851.00 withheld with $335 refunded. The court intends to adjust the withholding deductions to reflect the actual tax liability. The plaintiff's fringe benefits include health and dental coverage, long term disability coverage, $5,000.00 life insurance coverage, a 401k deferred compensation account containing $21,177.33 as of June 30, 1999 and a vested pension. She states the current value is unknown but present value can be determined by employing actuarial principles. The Defendant's Exhibit #11, the Plaintiff's "Champion Salaried Pension calculation" lists a normal retirement of July 1, 2026 with a monthly benefit of $449.73 after a Social Security offset estimated at $269.31 and arrived at without projecting final average earnings. The plaintiff, a high school graduate, lists her position at Champion as Sr. Administrative Assistant.
The defendant is a carpenter and has been throughout the marriage. Currently he devotes 90% of his work as a CT Page 14440 sub-contractor to trim work, thereby avoiding framing and other heavy lifting to spare his left knee which is injured. His financial affidavit filed September 23, 1999 lists $503.00 gross weekly revenues with eleven business related deductions which appear generous to the court. The defendant's current work as a trimmer obliges him to go to and from his home and the job site. The court cannot credit his deductions for the following weekly expenses:
 Tool shop rent $ 47.00 Van gas maintenance 55.00 Carpentry materials and supplies 80.00
$182.00
and, after adding them back, arrives at a net of $398.00 weekly. At the time of trial in September 1999, the defendant had not filed his 1998 income tax returns. Upon entry of the decree he may seek COBRA medical coverage for himself at his expense. He is a high school graduate.
The parties' principal asset is the marital home which was purchased in July, 1991 for $170,000. Half of the down payment was provided by the plaintiff and the other half was contributed by the plaintiff's parents. The house was a two bedroom ranch needing septic repairs costing $3,000.00 also paid for by the plaintiff. The initial repairs consisting of painting the interior by the parties. The electrical system was upgraded and the floors redone by tradesmen. A major renovation was begun with defendant doing much of the work. He traded or bartered with other tradesmen when he could. An equity line of credit of $50,000 was opened from which materials and labor were paid for totaling over $30,000. The roof was razed and raised creating a second floor and about doubling the interior living space. In July, 1994 the defendant fell from a corner of the roof. He broke his right wrist and the following January or February had a broken bone reset. He has a permanent limitation in his wrist. The exterior was finished in the Fall of 1996. The defendant matched the exterior shingling with the lower courses as well as the windows and trim, working alone. The interior is substantially done except for hand railings, a closet and some hardware. The defendant bartered for much of the work he could not perform such as electrical and plumbing. The defendant's Exhibit #15 clearly demonstrates the work with photos taken before, during and after completion of the exterior. CT Page 14441
The plaintiff drew the remaining equity line balance of $17,269.77 by check dated November 12, 1998 made payable to herself, (Defendant's Exhibit #7). She deposited $16,100.00 with her attorney and various bills and other expenses including a security deposit for the defendant were disbursed (Defendant's Exhibit #8). The object of this arrangement was to complete the work in order to obtain a certificate of occupancy after which the defendant agreed to move within two weeks (Agreement filed #112 and entered on Motion #10 1.03). The defendant moved on April 1, 1999.
The defendant's valuation of the marital home was established by a real estate appraiser as $290,000.00 as of September 8, 1999. The plaintiff relies on her own opinion of $250,000.00. The court finds the fair market value of the marital home to be $290,000.00 encumbered by a first mortgage balance of $125,000.00 and the equity loan of $50,000.00.
The plaintiff attempted to attribute the causes of the breakdown of the marriage to the defendant. The court finds the defendant's version of his moving his motor vehicle during visitation credible and plaintiffs claim that he tried to run her down incredible. The parties sought counseling unsuccessfully. Both parties described the increasing frequency of arguments over money matters. The defendant was diagnosed as having attention deficit disorder for which his physician prescribed medication. The court does not hold either party as more responsible for the breakdown.
The court further concludes that the plaintiff has the higher earning capacity, a secure position and fringe benefits not available to the defendant due to his occupation.
The plaintiff is in good health. The defendant, in addition to his knee and wrist, both physical conditions described supra, had prostate surgery in June of this year but it did not affect his ability to work. He is otherwise in good health.
The parties have agreed upon joint legal custody, principal residence with the plaintiff and visitation by the defendant. They have not agreed on child support. The court does not accept either party's support guidelines worksheet. The court has recalculated the support obligation on its own worksheet, attached hereto. CT Page 14442
In his claims for relief the defendant has offered to maintain $100,000.00 of life insurance for the two children providing a death benefit for each child of $50,000.00. The court accepts the proposal and will so order as part of the judgment.
Having reviewed the evidence in light of the relevant statutes including §§ 46b-81, 46b-82 and 46b-84 as well as relevant case law, the court enters the following decree.
1. Judgment is entered dissolving the parties' marriage on the ground of irretrievable breakdown. Each party is declared to be unmarried. The following orders are entered as part of the judgment.
2. Joint legal custody of the children is ordered with principal residence to remain with the plaintiff and the defendant to have visitation as follows:
The children shall visit with the defendant on alternating weekends from Friday at 6:00 p. m. until Monday morning at 8:00 a.m. during the summer; during the school year he will deliver them to the plaintiff Sunday evenings at 7:00 p. m. The defendant shall have the children on Thursday evenings from 5:00 p. m. to 9:00 p. m. during the summer; during the school year he will pick the children up from school and deliver them to the plaintiff at 7:00 p. m. Each party shall have the right to have the children for two uninterrupted weeks in the summer, provided however, that each party shall notify the other by June 1 in writing of the two weeks selected. Unless stated herein otherwise, all pick-ups and deliveries of the children will be done at the Pine Hill Deli adjacent to the plaintiff's residence.
The holiday visitation shall be as follows:
a. In the event that any of the weekends involve a three day weekend, the parent entitled to have the children for that weekend shall have the entire weekend.
b. Thanksgiving; from Wednesday after school until Sunday evening at 7:00 p. m., shall be with the defendant in odd-numbered years and with the plaintiff in even-numbered years.
c. Christmas; the children will be with the defendant from 5:00 p. m. to midnight on Christmas Eve, and they will be with the plaintiff for Christmas Day. The balance of the Christmas school CT Page 14443 holiday, including New Year's Day, shall be shared equally between the parties, i.e., in the odd-numbered years the plaintiff shall have the children with her from December 25 through December 29, and the defendant shall have the children from December 30 until 7:00 p. m. on the day before they return to school. In the even-numbered years the defendant shall have the children from December 26 through December 29.
d. In addition to the visitation schedule described above, the defendant shall have visitations with the children on his birthday from 5:00 p. m. until 8:00 a.m. the following morning when his birthday falls on Monday through Friday; on Saturday or Sunday, he shall have them from 10:00 a.m. until 8:00 a.m. on the following day.
e. The defendant shall have reasonable telephone access with the children including, but not limited to, week nights, and the plaintiff shall not prevent the children from answering the phone or from speaking to the defendant.
3. Child support of $103.00 weekly is ordered. A wage withholding order is entered. The defendant is to be provided with an advisement of rights which is then to be filed with the court. The court is aware that the defendant currently a sub-contractor, but this order may have future application. The guidelines and worksheet is attached and incorporated herein.
4. The plaintiff shall continue the health insurance coverage for the children. Uninsured bill balances shall be divided pursuant to the guidelines provision. The plaintiff shall cooperate with defendant if he elects coverage per COBRA.
5. No periodic alimony is ordered.
6. The plaintiff is awarded the defendant's interest in 1379 High Ridge Road, Stamford "as is" and subject to both the first mortgage and the equity loan which encumbrances the plaintiff shall assume and shall hold the defendant harmless and indemnified. The defendant is awarded $50,000 for his interest in the real estate payable as follows:
a. Within 120 days of the issuance of this decree, the plaintiff shall pay the defendant the sum of $20,000.00. The plaintiff shall execute a promissory note and mortgage deed in the amount of $30,000.00, prepared by the defendant's counsel. CT Page 14444 Said note and mortgage deed shall be recorded and subject only to the first and second mortgages and shall provide for the statutory covenants, shall carry an interest rate of five percent per annum which, at the option of the plaintiff, she can either pay or allow to accrue, until the note and mortgage shall become due and payable, which shall occur upon the earliest of the following events:
i. The remarriage or cohabitation of the plaintiff, as defined by statute;
ii. When the younger child turns eighteen, or graduates from high school, or is sooner emancipated; or
iii. The plaintiff's default, pursuant to provisions of any of the mortgage(s) encumbering the realty. In the event that the plaintiff does not pay the note and mortgage debt in full to the defendant within 30 days of one of the events described in (i) through (iii) above, then the house shall be sold as provided in subparagraph b.
b. In the event that the plaintiff does not pay the $20,000.00 sum to the defendant, or does not execute the note and mortgage in favor of the defendant within 30 days after entry of judgment, or if one of the events described in subparagraph (i) through (iii) occurs, then, in that event, it is ordered that the marital residence at 1379 High Ridge Road, Stamford, be sold, by listing same immediately with a Stamford broker mutually agreed to by the parties, via a multiple listing agreement. Until its sale, the plaintiff shall be solely responsible for, and shall pay the mortgage, home equity line of credit, real estate taxes and homeowner's insurance and other costs associated with the property as they become due, and shall hold the defendant harmless thereon. Upon the sale of the realty, the following liabilities shall be paid in full out of the net proceeds from the sale of the residence: the first mortgage and the Home Equity Line of Credit and customary closing costs. After payment of the foregoing debts and expenses, the defendant shall receive the sum of $50,000.00, plus interest accruing from the 121st day after the issuance of the decree, less any principal payments made by the plaintiff to the defendant, and the plaintiff shall receive the balance of the sale proceeds. This court shall retain jurisdiction over the listing and sale of the realty and disposition of the proceeds, (cf. Roberts v. Roberts,32 Conn. App. 465). The defendant's award shall be secured by a mortgage CT Page 14445 deed prior only to the existing mortgages, allowing defendant the right to pursue foreclosure, collection via execution but not by contempt citation.
7. The defendant shall obtain within sixty days of the decree, and maintain a $100,000.00 life insurance policy on his life, naming as beneficiaries of a death benefit of $50,000.00 each. The plaintiff shall maintain life insurance on her life, available through her employment, naming the minor children as equal beneficiaries of the death benefit. This obligation shall continue for both parties as to each child for as long as there exists a child support obligation to that child.
8. The plaintiff is awarded the contents of the marital home now on the premises, and her other remaining assets.
9. The defendant is awarded the tangible personal property now in his possession as well as his rifle, his shotgun, his archery equipment, his canoe with paddles and any remaining tools of his trade that may be at the marital home.
10. The balance of the equity line still on deposit with plaintiff's attorney shall only be disbursed to pay for the remaining work needed to obtain an C.O. A preliminary inspection may be necessary to determine the scope of the work. Upon receipt of the C.O. any balance may then be disbursed to the plaintiff.
11. Each party shall be solely responsible for the remaining liabilities listed on the respective affidavits. The plaintiff has submitted a list of debts for which she seeks reimbursement[1] as well as the $2,700.00 disbursed for defendant's security deposit. The court declines to make such an order but does state that same was taken into consideration in fashioning all the orders. The court also declines to order $587.20, received by plaintiff from the Ring's End account, returned to the escrow account but did take same into consideration in fashioning all the orders.
Counsel for the plaintiff shall prepare the judgment file. Counsel for the defendant shall prepare the quit-claim deed, mortgage papers and other documentation necessary to effect transfer of title and security for defendant's lump sum award.
HARRIGAN, J. CT Page 14446